And we'll move to the third case of the day, the estate of Tavaris McGuire v. Jeramie Dodd and others, Good morning. Good morning. May it please the court. My name is Liberty Roberts and I represent the police officer defendants in this case, Aaron Tarr, Jeramie Dodd and Richie Sears. This case is before you on appeal from a district court's order denying qualified immunity. The officers presented arguments at the district court on both prongs of the qualified immunity issue. However, the district court's decision did not address qualified immunity at all. As a matter of fact, nowhere in the decision does the term qualified immunity appear, nor does the judge address either of the two prongs for qualified immunity. Can I ask, given that we have some jurisdictional issues, but why not just ask Chief Judge Pratt to answer the question? Judge, while that could be a possibility of proceeding at this stage, I think that the option to appeal immediately from qualified immunity is an option for these defendants. But if she hasn't actually denied it? I think this case is a little bit unique in that there, as this court's noted before, when looking at the merits of a claim, there's some crossover into what's qualified immunity and what's not. And what's presented here is either a requirement to remand and have the court address that second prong, or this court actually has the opportunity to look at the way that Judge Pratt analyzed what is essentially the first prong. Even though she did not refer to that as being done within the qualified immunity analysis, Judge Pratt did look at this and say, consider whether or not the conducted issue amounted to a constitutional violation. And she ultimately found that even though there's no disputed facts, it was an issue for the jury to decide. Based upon that, I believe this court actually has jurisdiction. How can you say there are no disputed facts here? If you look at the court's decision, what's unique about this case is everything was captured on video. And so the court decision identifies two facts which Judge Pratt thought that in the briefing the parties disagreed on. One of those was the way the parties characterized Mr. Tavares' behaviors. As a matter of fact, Judge Pratt said there was a different interpretation of McGuire's behaviors from the time of the arrest to the time he was taken to the hospital. As you look through the decision, Judge Pratt looked at the video and analyzed all of that. There was nothing that was disputed in that. Whether or not the defendant characterized the behavior as fidgety or the court characterized it as being very animated, it was a difference of adjective applied but not a difference or a disputed fact. Mr. Roberts, can I ask you a question following up on Judge Hamilton's questions? If we were to remand this, you know, the biggest issue for me here is Officer Tara. I watched the video. I have no idea what he's doing in this case. None. I don't have a clue. He handed Mr. McGuire his shoes. That's all he did. And I guess the reason I say this isn't that strong evidence that the district court just, she didn't consider qualified immunity for one reason or another and may have been just a result of oversight on her part, in which case we would have to remand for her to consider the objective reasonableness of each of the officers who have been sued. You know, which leads me to Judge Hamilton's questions. Why not just ask her in the first instance to consider the issue of whether or not the officer's actions were objectively unreasonable under the first prong? Certainly, Judge. And let me go, let me ask further. And maybe it's because your argument under the second prong is that there's no analogous case here that says that an individual, I understand, and maybe the plaintiff's lawyer will talk about this, that their argument is very broad, that you're entitled to medical care, right? It's very broad. I couldn't find any case anywhere that says a plaintiff has the right to be put into a squad car and driven to a hospital when it's a few minutes away as opposed to waiting for an ambulance. I suspect we would be here if that squad car got into an accident on the way to the hospital or was somehow delayed in getting Mr. McGuire to the hospital. But maybe that's the answer. I don't know. Your Honor, I agree on all the points that you have made. And while there may have been more than one route in addressing where we are today, I don't know that there is a required route. There's nothing that indicates that these defendants didn't have a right to appeal. And because of the way the court analyzed the merits of the case and sort of crossed over into whether or not there was objective reasonableness, it appears as though there's an argument that the first prong has been addressed. My contention here before this court is that the district court did not review that at all. But it all appears— The natural conclusion from that is that the district judge has not decided the issue of qualified immunity, right? I would agree, Your Honor. And if that's the case, we don't have a denial of qualified immunity, and we have a lack of appellate jurisdiction. I think the fact that the judge's order specifically remanded or identified that these issues against these officers are proceeding to trial is a denial of qualified immunity. The issue was completely briefed. But she doesn't—but it was briefed, but she—for instance, she doesn't weigh in on the competing affidavits of the medical or the competing opinions of the medical experts. Right? Which is an issue that maybe she should have weighed in on. And, Your Honor, I would respectfully disagree there. I think that if you look at page 7 of the appendix, the court actually identified where there was two different statements from the experts. And in a footnote, the judge notes that Dr. May had one opinion, but the plaintiff's expert, Dr. Unger, had a different opinion. And the court accepted Dr. Unger's opinion at this stage as is required. Let me ask you then, how is that not a disputed fact? If your client's experts say one thing and their experts say another thing, and at this stage the district court, as she must, takes the facts in the light most favorable to your opponent? Because assuming the facts most favorable to the plaintiff, assuming Dr. Unger's position is what the court's going to look at, applying the law to those facts still provides for judgment in favor of the defendants. It still allows for the entry of qualified judgment. So it's not just whether or not the fact's disputed, but if we take it in the light most favorable to the plaintiff, which is exactly what's required here, my clients are still entitled to qualified immunity. What Dr. Unger found was that even if you assume that the twitching of McGuire's legs and arms should have alerted the officers to a possible seizure or an emergency, put that in context with the court's findings that from the time Tavares, the car was stopped to the time of 12.56 when Mr. Tavares started to shake his shirt, there was no unremarkable behavior. Therefore, the only thing that the court's looking at here is a period of 12.56 until the ambulance was called at 1 o'clock. Your Honors, I would reserve the remainder of my time for rebuttal. All right. Thank you, Ms. Roberts. On behalf of plaintiff, Ms. Briggs. Good morning, and I will tell you I'm having some vision issues with dry eyes, so I'm fine to read here, and I can see you, but it's a little unclear, so if you ask, I may have to squint. All right. I would like to first address the jurisdictional issue because I believe that is where a lot of this factual dispute comes from. At the beginning, you see throughout the brief of the… What's the factual dispute with Officer Tara? Officer Dodd? Tara, T-A-R-R-H. They were all three of the officers. They're not all on the video all of the time. There were like nine of them on the video. Right. He does virtually nothing except hand Mr. McGuire his shoes, and then Mr. McGuire leans over and goes to put on his shoes. What was objectively unreasonable about Officer Tara's conduct? All three officers had joint responsibility for providing medical care. Well, there were like nine of them there in the video. Some of them were the jail officers who were not in the jail. Tavares was not in jail custody at that point. He was only in the city custody, and as a matter of fact, we had entered a stipulation after discovery dismissing the county with the understanding that they would not be named as a non-party because the transfer had never been made. There's a 10- or 15-minute bookend procedure, and during that 10- or 15-minute bookend procedure, then the transfer goes to the county. So you're either the city or the county, and what the facts show here is they never even got to start the bookend procedure because they were told at some point, and this is what is very unclear on the record. Corporal Peterson and Sergeant McGuire, who are the Howard County folks, they refused admittance of Tavares into the jail, and both of them said they cannot tell us where in the time frame they refused admittance. I got it. Is your argument on the clearly established right, is it just so broad that defendants or plaintiffs or pre-custody individuals are entitled to medical care? Is that the argument? Because I can't find any analogous case that says that they have the right to be put into a squad car and driven to a hospital instead of calling an ambulance that's four minutes away. You could imagine a scenario, right, where the police are, I don't think they're EMTs, but the EMTs are called, and I see the other side of this coin here, right? If we say they should have been driven to the hospital in a squad car, perhaps that's a dangerous precedent. I don't believe that's what we're saying. We're saying delay. If you go even back to the very early Estelle v. Gamble case, and I've spoken— But delay by what? Delay by calling the ambulance? Delay in getting medical care, whether that's calling an ambulance, whether that is taking them to the hospital. And it was—I mean, there is note in there that they are generally taken by squad car, but it's not required. Calling the ambulance is calling any medical care. They had no medical assistance at the jail at that time at all, at that time of night. So the only option was to get this man some either EMT, get him to the hospital, whatever fashion that would be. It doesn't matter. But I would kind of like to address a little bit of the jurisdictional issue on the factual disputes. Throughout the brief, there's a constant use of the term fidgeting. Well, when you look at the video at the end when he's picking things out of the air and he's not making sense, he's clearly in distress, that is not fidgeting. And that's what we get throughout this thing. He refused to give his name or was he unable to give his name. Officers at the jail said that Tavares, when he'd been booked before, had always been communicative. He had been a person that cooperated. He was not an unruly passenger when he was being booked in. But in this case, he spoke not one word, not one. And even Officer Sears asked him, are you all right, you know, early on in the video. And one of the cases I cited in there in the brief, I'm sorry, I forget which page it is, talks about the inability, lack of communication is noticed to officers that help is needed. Is there any testimony in the record from anyone that Mr. McGuire at any time notified anybody that he had swallowed a bag of, I think it was methamphetamines. No, our contention is that he was unable. He was unable to communicate. Unable, he was. From the time they pulled him over. Not from the time they pulled him over. You have a long timeline here. The district judge brings it down to about eight minutes or so. But from the time he was pulled over in the car until the time he died in the hospital, he was totally unable to inform the officers that he had swallowed a bag of narcotics. No, I don't think that's a reasonable conclusion. But when you're out at the scene, everybody agrees that out at the scene of the arrest, that he wasn't exhibiting the behaviors that he later exhibited. Now, at the time, when he, maybe he himself didn't know, you know, hey, if I swallow this meth, it's going to kill me. Obviously, or he wouldn't have done it. He would have rather gone to jail, I'm assuming, than to die. But once he got to the jail and was unable to communicate, they said he wasn't making eye contact. You know, he was just doing nothing. At that point, he is in their custody. It's their responsibility to take a look at him and say, hey, this guy needs help. And what is kind of important is the jail wouldn't accept him. The jail said, no, we're not going to take this guy without medical care. And they can't tell us exactly where in that timeline they said it. Corporal Peterson and Sergeant Boyer both said that. I've mentioned that a couple of times in my brief. So, but with respect to the law being clearly established, I'd like to address that a little bit. Going back to the number of cases are talk about delay. And they, the plaintiff would submit that the minor delay, I've cited several cases in there, that minor delay can even result like minutes, three minutes. One was a nurse didn't give help for three minutes. And, in fact, the Ortiz case, talk about lack of. That case was, I think the facts in that case were a little bit different, right? The plaintiff was having a seizure or something like that and the nurse just stood by and watched. Yeah, but not for very long. Right, right. No, I understand. But the three-minute delay is important because it has to do in part with the medical emergency, right? If someone's having a heart attack, it's an obvious heart attack. They're clutching at their chest. A minute delay could be wrong. Doesn't that go to the factual dispute here? It does. And this man was clutching. How so? You have, hold on, let me finish my question. How so? Because you have to have, I think you have to have an analogous case to establish a clear right unless you want us to expand hope or something along those lines. I understand what your argument is regarding delay, but go ahead. I don't believe that we have to have a precisely analogous claim. You know, I did mention a couple of cases from other circuits which talk about failure to provide life-saving measures. That's on Pages 30 and 31 of my brief, and it talks about the delay in conjunction with the lack of emergency medical care. So I don't believe you have to get to a case that is identical. But when this man is clutching his chest, and what did my expert say? The fact that he was clutching at his chest ought to have alerted the officers that medical help was needed. And he also says, my expert says, hey, I've looked at this video. The defendant's expert looked at the video, and you have a couple of opinions. So that is what a jury is for, is to say who, they don't have to believe my expert, they don't have to believe the other side's expert, but they do need to weigh the decision. And as you point out, you also have the jail staff refusing to accept the fellow until he gets medical help. Yes, I think that's a huge fact. And with respect to the jurisdictional issue, I believe this is simply a backdoor effort to try to re-litigate the facts. They do not accept the plaintiff's facts on this. If you read my brief, you read theirs, you go, did he refuse to give his name, or was he unable to speak? Ms. Briggs, can I ask you, it seems to me we've got two different jurisdictional issues here. One is simply whether the district court denied qualified immunity or simply did not address the issue yet. And then the second is the much more common issue that we see in these qualified immunity appeals of debating whether the defendants are actually trying to continue to debate the facts or accepting the facts as construed by the district court or by the plaintiff. I think she implicitly ruled on it because she went into an extensive analysis of the facts, and she said she discussed the case law about what the Fourth Amendment and the objective reasonableness standard. So I think implicitly she may not have used the term, but I think she implicitly denied it. Well, she clearly addressed step one, the merits of the constitutional claim, but that's not enough to resolve qualified immunity. I think that she – I cited the Perry v. Winsell case in my original brief to her, and I think she just thought it was so obvious that the right was established. That's my personal belief. All right, thank you. All right, thank you very much, Ms. Briggs. Rebuttal, Ms. Roberts. Thank you, Your Honors. As this court has said in the estate of Williams v. Rosenkline back in 2018, just the fact that there is reference to disputed facts in a brief does not change this from a purely question of law to make it a question of fact. The key inquiry for this court is whether or not the appellant's position or their arguments necessarily depend upon disputed facts. Here, as you can see, the entire argument of the appellant accepts the facts that the district court has found. The district court specifically said that from the time Tavares went from – exited the vehicle to the time he was handcuffed, there were no unusual behaviors, and he did not appear to be under the influence of an intoxicant. We accept that. The court went on to say that from the time he entered the bookend area, his behaviors were completely unremarkable. The court found that for the 14 minutes that he was seated in the bookend area, he exhibited no alarming behaviors. The court says that when he got up and had his handcuffs removed, and he placed his personal belongings in a tub – You could skip. I see what you're doing, but you could skip to 1256, I think it is, or 1254. When it gets to 1256, the very first time, the court says, this is 29 minutes after entering the bookend area, he removes his shirt. That is the very first time that the court finds that there is any remarkable behavior. The appellants accept all of those facts as true. Therefore, there is no disputed fact that's being presented to this court. The entire argument of the appellants is that when you look at these facts, based upon that time from 1256 to 1 o'clock when an ambulance was called, were these officers doing something that violated Tavares' constitutional right, and were they on notice that doing so was a violation of their rights? If you look at the record, they were asking him questions. They were trying to determine what was happening. And he was not responding, right? They asked his friends. That is correct. He did not respond to those questions. What should we make or what should the district court make of the fact that the jail staff were refusing to accept him because of his condition? And I think, Your Honor, if you look at the video, and the court does not put this in that particular timeline, but if you look at the video, the court says the first time that any of the officers, including the jail officers, show any concern for Tavares is when he starts to take off his shirt. Therefore, even though the individual officers say, I can't, the jail officers say, I can't say when I made that determination, the video shows that's when they started paying attention. Thank you, Your Honors. All right. Our thanks to both counsel. The case is taken under advisement.